# Richmond.

## FOLEY V. HARRISON'S EX'OR.

### MAY 3d, 1888.

Absent, Richardson, J.

1. WILLS—*Construction—Estate—Case at bar.*—Testator gave all his estate, except his lands and certain furniture, in certain shares to certain legatees, and in case of death of any and their children without heirs of their bodies, their shares to revert to the survivors, and gave all yearly interest and dividends on certain stocks and bonds, to said legatees, and closed with the words: " When my estate must, under the laws of Virginia, and of this my will, be closed, I wish all to be divided as I herein and hereby provide for the division of my estate in the meantime :"

HELD :

    To the said legatees is given an absolute interest in all the property save as accepted.

2. IDEM—*Distribution—Equalization—Case at bar.*—By consent decree certain uncollected assets were d¹ ¹ded in kind according to a scheme in master's report. Later, certain ᴅebts not embraced in that scheme, were collected and distributed by the court, regard being had to losses under first distribution, so as to equalize the shares : *held,* Proper; equality is equity.

Appeal from decrees of circuit court of Prince William county rendered, respectively, May 10th, 1875, May 14th, 1877, and May 15th, 1883, in the cause wherein the appellee, B. H. Jordan, executor of Benoni E. Harrison, deceased, was complainant, and the appellant, Jane R. Foley and others, were defendants. Opinion states the case.

*E. C. Nichol* and *W. H. Payne,* for the appellant.

1. There is error in the decree of May 11th, 1875, construing the will of B. E. Harrison, because it holds that appellant is not entitled to an absolute estate in two-ninths of the bank stock and State stock of the decedent, B. E. Harrison, deceased.

In this decree it will be observed that the court reserves its opinion "as to the time of final distribution of the State stock and other personal property mentioned in the fourth clause of the will." It is admitted, and has been acted on by the court, that the interest on said stock is due and payable under said will to the devisees mentioned in the 5th section thereof, of whom the appellant here is one, and entitled to two-ninths.

In the fourth section of B. E. Harrison's will it is provided, "all the stock, notes of Virginia, railroad stocks, and all and any amount that may be awarded to me by the State of Virginia or the United States for property taken and destroyed during the war between the northern and southern States, all these items I hereby perpetuate, except the interest on them and dividends, which may be declared; the interest and dividends to be collected and distributed by my executor or such persons, in the event I have no executor in existence, as the county court of Prince William may appoint from time to time to carry out this my will."

The circuit court reserved its opinion "as to the time of final distribution of the State stock and other personal property mentioned in the fourth clause of the will."

If this provision of the will be valid, there can be no final distribution of this property. The will says "I hereby perpetuate," which means that the property shall be held in tact, undivided and undistributed, not for a hundred, thousand or million of years, but *ad infinitum.* Is this provision of the will valid or invalid? It would be interesting, were it necessary to pursue the historical development of the sentiment and legislation that finally abolished the doctrine of entails in Virginia. But the subject is too familiar.

Courts of justice will not indulge even wills, so as to create a perpetuity, which the law abhors, because by perpetuities (or the settlement of an interest, which shall go in the succession prescribed, without any power of alienation) estates are made incapable of answering those ends of social commerce, and providing for the sudden contingencies of private life, for which property was first established. 2 Bl. Com., 174. In *Carter* v. *Tyler*, 1 Call, 165, Judge Pendleton, in discussing "perpetuities" remarks, but these the law "prohibit as injurious to society." Mr. Minor (2 Minor's Inst., 418,) says the principal upon which a fixed period is prescribed to executory limitations, is to prevent perpetuities. Accordingly it is established that, although future interests may be limited to as many persons successively as the testator or grantor might think proper, yet they must all be *in esse* during the life of the taker of the first estate; for then, as it was said, the candles are all lighted and consuming together, and the ultimate remainder is in reality only to that person who happens to survive the rest, or, according to the canon established upon this subject, every executory limitation, in order to be valid, shall be so limited that it must vest in interest, if at all, within a life or lives in being, and the utmost period of gestation (reckoned in Virginia at ten months—V. C., ch. 119, sec. 8), and twenty-one years thereafter, the period of gestation being allowed only in cases wherein gestation exists. 2 Minor's Inst., 419, and authorities there cited.

If, then, this provision of the will for perpetuating the stock, bonds, etc., is invalid, what becomes of the property? Under the fifth section of said will and the law of Virginia, it descends absolutely to the five persons therein mentioned, of whom the appellant here is one. In some cases the interest will vest absolutely in the legatee, though the terms of the gift would seem restricted to a lesser interest. 2 Lomax on Ex'rs, 135 (2d ed.). Chattels are not entailable, neither by deed nor by will, and it is a well established principle in Eng-

land and in Virginia, that if a gift of a chattel be made to one, and the heirs of his body lawfully begotten, or in words which would create an estate-tail in lands, the donee will take the absolute estate free from the limitation to the issue.

The principle equally applies in cases where the terms of the gift would generally, in the application to real estate, create an estate-tail by implication, as where in the foregoing instance they create it expressly, and therefore if a chattel be given, whether by will or by deed to A, or to A for life, and if he die without heirs of his body lawfully begotten or without issue, with limitation over to another, A will take the absolute interest. *Idem,* 136.

The case at bar is very similar to the illustration just given. The will under consideration provides in the fifth section thereof, "but in the event of the death of any of them (the devisees) and their children without heirs of their bodies, the portion of my estate willed to them is to revert to the survivors of the five herein provided for." The case of *Thompson* v. *Griffith,* 1 Leigh, 321, overruling *Timberlake* v. *Graves,* 6 Munf., 174, and construing a will, sustains our position as to perpetuities, and establishes the doctrine now held in Virginia.

It is also provided in Harrison's will, "it is my intention to give all the interest and dividends that may accrue yearly to the five whom I have named, and finally, when my estate must, under the laws of Virginia, and this my will be closed, I wish all to be divided as I herein and hereby provide for the division of my estate in the meantime." The devise of the profits of a term is a devise of the term itself; and an indefinite gift of the interest or the dividends gives the absolute property of the stock. 2 Lomax on Ex'rs, 139 (2d ed.), and authorities there cited. The manifest intent of the testator is that the five persons mentioned in the will shall have the said stock, etc., and the law supplies the uncertainty as to time, and says *now !*

2. The second assignment of error as to commissions allowed the executor is waived.

3. The decree of the 15th of May, 1883, in the said consolidated causes is *erroneous,* because it overturns and re-opens every question and principle settled by the final decree of distribution of October 9th, 1877.

The case of *Rawlings' Ex'or* v. *Rawlings,* 75 Va., 76, bears a strong analogy to the one now under consideration. In that case Judge Burks, in delivering the opinion of the court, discusses very elaborately the distinction between final and interlocutory decrees, and the rule by which to distinguish them is stated to be that laid down by Judge Baldwin in *Cocke's Adm'r* v. *Gilpin,* 1 Rob., 20, *et seq.,* viz: " When the further action of the court in the cause is necessary to give completely the relief contemplated by the court, then the decree upon which the question arises is to be regarded not as final, but interlocutory. I say the further action *in* the cause to distinguish it from that action of the court, which is common to both final and interlocutory decrees—to-wit: those measures which are necessary for the execution of a decree that has been pronounced, and which are properly to be regarded as adopted, not *in* but *beyond* the cause, and as founded on the decree or mandate of the court, without respect to the relief to which the party was previously entitled upon the merits of his case."

Is the decree of October 9th, 1877, final? It recites, after the formal part: " On consideration whereof, and by *consent,* the court doth adjudge, order and decree, that the said report be, and the same is hereby confirmed, in so far as the same treats of the scheme for the division of the uncollected assets of the estate of B. E. Harrison, deceased. And it is further adjudged, ordered and decreed, that Benoni H. Jordan, the executor of the said B. E. Harrison, deceased, deliver to the several legatees the assets as allotted to them in said report."

Upon this decree is this endorsement: " *We consent to this. B. H. Jordan and W. C. Nalls.*"

Certainly it was final, so far as the division of the uncol-

lected assets was concerned, and it was so by the consent of B. H. Jordan and W. C. Nalls, in open court given. In addition to this, the uncollected assets were *actually divided*, and each party received his share and acquiesced therein, and became *his own administrator of the assets allotted to him.*

It will be remembered (because the executor, B. H. Jordan, was *unbonded* and *insolvent*) that the said W. C. Nalls conceived this scheme for the distribution of the uncollected assets, prosecuted it to a successful conclusion, assented to it in open court, and reaped its fruit. Now, if this decree of October 9th, 1877, is final, it can be avoided in one of two ways only—viz: by bill of review or by appeal. (*Rawlings' Ex'or* v. *Rawlings*, 75 Va., 88.)

Neither of these courses was pursued. But suppose (*gratia argumenti*) that the decree of October 9th, 1877, is not final, can the said Nalls be heard to repudiate it in another and different suit, and long after he and the other parties had acted upon it and acquiesced therein ? Is he not *estopped* from doing this? Assent to a particular proceeding in court, if given with knowledge of the facts, is conclusive. Bigelow on Estoppel (4th ed.), 690, and authorities there cited. A party cannot repudiate his own acts. *Id.* 661.

Agreement upon a fact, as the basis of a contract between parties, is binding upon them, after the contract has been executed, estopping each party from taking any position to the detriment of the other inconsistent with the fact as agreed, assuming that the contract is not illegal. Bigelow on Estoppel (4th ed.), 655.

It will be found, upon an examination of these and other cases (cited in Bigelow on Estoppel), that wherever the rights of other parties have intervened, or the rights of the party alleging the estoppel have been otherwise affected by reason of a man's conduct or acquiescence in a state of things about which he had an election, and his conduct or acquiescence, or even laches, was based on a knowledge of the facts and of his

rights, he will be deemed to have made an effectual election; and he will not be permitted to disturb the state of things, whatever may have been his rights at first. Bigelow on Estoppel, 651, and various authorities there cited.

But the circuit court, by its decree of May 15th, 1883, has permitted him, the said Nalls, to disturb the state of things; has permitted him to repudiate his own solemn consent in open court given, after this appellant had acted thereupon. It has also overturned and reopened every question settled by the decree of October 9th, 1877, long after the acquiescence of every party therein and the condition of every party had been changed thereby.

Can this decree be correct? If so, it would seem that every decree, however solemn and however assented to by the parties, would be merely a "snare and delusion" to arise in the distant future to plague its unsuspecting victims and make "confusion worse confounded." On the contrary, maintain the integrity of the decree of October 9th, 1877, and the status of the parties is preserved, and the dignity and certainty of the law enforced. After the lapse of over five years, could the circuit court, by decree of May 15th, 1883, overturn the decree of October 9th, 1877? Vide § 5, ch. 177 of V. C., p. 1135.

*Relief sought.* 1. Construction of the will of B. E. Harrison, deceased, so as to vest absolutely in the appellant two-ninths of "all the stock, notes of Virginia, railroad stocks, and any amount that may be awarded to me (Harrison) by the State of Virginia, or the United States, for property taken and destroyed during the war between the northern and southern States."

2. Maintenance of the decree of October 9th, 1877, distributing the sperate and desperate assets of the estate of B. E. Harrison, deceased, and the division of the Norville debt among the devisees of B. E. Harrison, deceased, vesting in this appellant two-ninths thereof.

*D. A. Grimsley*, for the appellee.

LACY, J., delivered the opinion of the court.

This is an appeal from certain decrees of the circuit court of Prince William county, rendered, respectively May 10, 1875, May 14, 1877, and May 15, 1883. In the argument here the assignment as to the allowance of commissions to the executor of $7\frac{1}{2}$ per cent. by the decree of May 14, 1877, is waived as a mistake of fact, and the allowance of 5 per cent. to the executor upon assets distributed in kind is waived as sustained by the law, and no further notice will be taken of these assignments.

The suit was brought for the construction of the will of Binoni E. Harrison, and for the administration of his estate thereunder by the court. By the decree of May 10, 1875, construing the fifth clause of the will, the court held "that, by the fifth clause of the will of the testator, B. E. Harrison, an absolute estate is given to the legatees named in said fifth clause, and all the property of the said testator, except his real estate and the items of furniture mentioned therein, and the bank stock and State stock mentioned in the fourth clause." The will provided, in the first clause, for burying-grounds for the blood relations of the testator and of his father-in-law. Next (afterwards denominated the second section of the will) the residence of the testator, called "La Grange," was devised to B. H. Jordan, with certain furniture named and referred to in the decree, to remain in the house in the care ot whoever may be the occupant, until, under the law and the will, none could hold them. By the third clause, the farm called "Gravel Plain" was devised to the oldest blood relation not in possession of La Grange; this and La Grange to descend to the oldest blood relation left in existence, whether male or female, at the death of the occupant under the will, to continue in such possession until the death of all of them, and then to be dis-

tributed as provided by the fourth clause. The fourth clause directs interests and dividends declared on stocks to be distributed; but the manner of distribution is not provided. Otherwise the fourth clause contains directions that the whole estate, real and personal, be inventoried, appraised, and sold by the after-named executor; except the two tracts of land above, and the enumerated furniture therein, and the stock, notes of Virginia, railroad stocks, and whatever should be collected for damages done to the property of the testator during the late war. The testator says of these: "All these items I hereby perpetuate." What is meant exactly by these words, the circuit court has not determined; and, while it is probable that the meaning is to be discovered in the last lines of the second section of the will, "till under the law of this, my will, none can hold them," as to that we express no opinion. The fifth clause provides as follows: "I give and bequeath, to be paid as soon as received by my executor, two-ninths of all my estate, except La Grange and Gravel Plain, and the items of furniture named in the next section after the first of this my will, which I now make and call the second section hereof, to my nephew Binoni H. Jordan; two-ninths to my niece, Jane R. Foley, subjecting her two-ninths to pay the debt due testator by her husband; two-ninths to Elisha R. Nalls; and one-ninth to the children of the testator's deceased niece, Mary M. Harley. But in the event of the death of any of them and their children without heirs of their bodies, the portion of my estate willed to them is to revert to the survivors of the five herein provided for; then it is my intention to give all the interest and dividends that may accrue yearly to the five whom I have named; and finally when my estate must, under the laws of Virginia and this my will be closed, I wish all to be divided as I herein and hereby provide for the division of my estate in the mean time."

The circuit court held, as we have seen, that, by this clause of the will, an absolute estate was given to the named legatees in all the property of the testator, except his real estate, and

the items of furniture mentioned therein, and the bank stock and state stock mentioned in the fourth clause. It is not entirely clear from the language of the will what limitation is provided by the testator as to this State stock and bank stock; but, as the whole will must be construed together, it is most reasonable to interpret the provisions as to them, as the circuit court seems to have done, that they were to be held by the executors, and the interests and accruing dividends to be distributed, until the limitations as to the real estate and the furniture had reached the utmost limit allowed by the law of this state, and then the principal to be distributed as the other personal property was given; but the circuit court does not so decide, but excepts them merely from the operation of the decree, and as to them reserves its decision to some future time. There is no error in the decree, so far as it goes, upon this point, against the appellant, as the direction of the will that the amounts shall be paid by the executor as soon as received by him would seem to contemplate an absolute estate; but, if this be an erroneous construction of the will, it does not prejudice the appellant, to whom the absolute estate is decreed, and the exception is not upon that ground.

The next assignment of error is as to the decree of the 15th of May, 1883, because it is alleged to have overturned and reopened the decree of October 9, 1877, which is claimed to be a final decree which could only be overruled upon bill of review or appeal. By that decree it was provided, by consent, that the uncollected assets should be distributed in kind, so far as set forth in a commissioner's report setting forth a scheme to that end; and afterwards a debt due from Norville, and another from Hunton, not included in the foregoing scheme, having been collected, the amount was distributed by the court, with reference to the losses under the first distribution, so as to equalize, as far as might be, the portions of all. But the appellant insists that the Norville debt should have been divided into shares, and distributed without reference to the

distribution already had. But, as the result is to carry out and effectuate, as far as could be, the distribution provided by the will, it followed the true rule equality is equity; and it was equitable to so distribute the estate as to conform to the proportions fixed by the will, and there is no error in the decree complained of on this ground, which is the last assignment of error.

Upon the whole case, we are of opinion to affirm the decrees complained of.

DECREE AFFIRMED.